IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EUGENE ANDERSON,

    Petitioner,                      No. CIV-S-05-2490 MCE KJM P

    vs.

ROSANNE CAMPBELL, Warden,

    Respondent.                     <u>FINDINGS AND RECOMMENDATIONS</u>

    _____/

    Petitioner is a state prison inmate proceeding pro se with a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his Sacramento County convictions for violations of California Penal Code §§ 288(a) and 269(a)(1), and a multiple victim enhancement, Penal Code § 667.61(e)(5). Petitioner claims he was denied due process by the reading to the jury of CALJIC 2.03 and CALJIC 10.60 because these instructions, he says, shift the burden of proof away from the prosecution.  Petitioner further claims he was denied due process by respondent's failure to provide discovery of exculpatory evidence.

/////

/////

/////

1

I. <u>Background</u>

After a review of the record, this court accepts the Court of Appeal's factual recitation of the material presented to petitioner's jury:

> . . . The defendant began living with his girlfriend, who was the mother of the two victims, in the fall of 2000. The older victim, born in 1989, testified that defendant twice forcibly raped her when she was in the sixth grade. She told her aunt about the incidents a while after they happened, after her younger sister was examined for physical signs of molestation in May 2001. However, she did not tell anyone else until she spoke with police a year later, when her grandmother reported the incident after the aunt finally told her.
>
> The younger victim, born in 1992, only testified to one incident in which the defendant attempted intercourse with her and then had her orally copulate him. A family friend testified that the younger victim had told her during a 2001 visit that she did not want to go home because the defendant "sticks his peepee in [her] mouth" and "in her private," and had ejaculated a white liquid that looked "kind of like spit." The family friend reported this to the victim's family, and they decided to call the police. The younger victim told a police officer that the defendant had intercourse with her five times and put his penis in her mouth one time; when he asked why she had just finished telling an interviewer that nothing happened, she said she was afraid. She testified, however, that she never told the police officer that it had happened five times, or told an earlier interviewer that it had happened four times.
>
> A nurse practitioner examined both victims. The condition of the younger victim's vagina was consistent with past sexual abuse. An examination of the older victim did not reveal any indication of molestation.

Answer, Ex. A at 2-3.

II. <u>Standards Under the AEDPA</u>

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Federal habeas corpus relief also is not available for any

/////

/////

/////

2

claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA"). See Ramirez v. Castro, 365 F.3d 755, 773-75 (9th Cir. 2004) (Ninth Circuit affirmed lower court's grant of habeas relief under 28 U.S.C. § 2254 after determining that petitioner was in custody in violation of his Eighth Amendment rights and that § 2254(d) does not preclude relief); see also Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003) (Supreme Court found relief precluded under § 2254(d) and therefore did not address the merits of petitioner's Eighth Amendment claim).[1]  Courts are not required to address the merits of a particular claim, but may simply deny a habeas application on the ground that relief is precluded by 28 U.S.C. § 2254(d). Lockyer, 538 U.S. at 71 (overruling Van Tran v. Lindsey, 212 F.3d 1143, 1154-55 (9th Cir. 2000) in which the Ninth Circuit required district courts to review state court decisions for error before determining whether relief is precluded by § 2254(d)).  It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d). See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

/////

/////

/////

---

[1] In Bell v. Jarvis, 236 F.3d 149, 162 (4th Cir. 2000), the Fourth Circuit Court of Appeals held in a § 2254 action that "any independent opinions we offer on the merits of constitutional claims will have no determinative effect in the case before us . . . At best, it is constitutional dicta." However, to the extent Bell stands for the proposition that a § 2254 petitioner may obtain relief simply by showing that § 2254(d) does not preclude his claim, this court disagrees. Title 28 U.S.C. § 2254(a) still requires that a habeas petitioner show that he is in custody in violation of the Constitution before he or she may obtain habeas relief. See Lockyer, 538 U.S. at 70-71; Ramirez, 365 F.3d at 773-75.

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different. As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002). A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S. 919 (2003). Where the state court fails to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable. Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). In other words, the court assumes the state court applied the correct law, and analyzes whether the decision of the state court was based on an objectively unreasonable application of that law.

"Clearly established" federal law is that determined by the Supreme Court. Arredondo v. Ortiz, 365 F.3d 778, 782-83 (9th Cir. 2004). At the same time, it is appropriate to look to lower federal court decisions as persuasive authority in determining what law has been

1  "clearly established" and the reasonableness of a particular application of that law.  Duhaime v.
2  Ducharme, 200 F.3d 597, 598 (9th Cir. 1999); Clark v. Murphy, 331 F.3d 1062 (9th Cir. 2003),
3  overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63 (2003); cf. Arredondo, 365 F.3d at
4  782-83 (noting that reliance on Ninth Circuit or other authority outside bounds of Supreme Court
5  precedent is misplaced).

III.  Jury Instruction CALJIC No. 2.03

Petitioner's first claim for federal habeas relief is that the trial court erred by reading CALJIC 2.03 to the jury, which resulted in a violation of his federal constitutional rights to due process and a fair trial.  Petition (Pet.) at 11-14.  CALJIC 2.03 provides:

> If you find that before this trial the defendant made a willfully false or deliberately misleading statement concerning the crimes for which he is now being tried, you may consider that statement as a circumstance tending to prove a consciousness of guilt.  However, that conduct is not sufficient by itself to prove guilt, and its weight and significance, if any, are for you to decide.

RT 734 (as read to jury).

Petitioner argues the instruction could only apply to his interview with a detective in jail, during which he denied the accusations against him and made no statement that was "inherently improbable or inconsistent with anything else that [he] said."  Pet. at 12.  He claims

/////
/////
/////
/////
/////
/////
/////
/////
/////

that the instruction unfairly undercut his testimony and shifted the burden of proof away from the prosecution. Pet. at 14. The state appellate court rejected this argument, stating:

> . . . [A]ny error in giving the instruction would be harmless under any standard. The instruction would apply only if the jury found [petitioner's] denial to be false, and this would necessarily mean that the jury accepted the prosecution's evidence and rejected the defense case. Under such circumstances, the inference of guilt arising from a 'false' denial of guilt could add nothing to the jury's evaluation of the evidence and determination of guilt." (People v. Williams (2000), 79 Cal.App.4th 1157, 1166, fn. 8). "The inference of guilt suggested by the instruction is a permissive one. The jury is admonished that 'such conduct is not sufficient by itself to prove guilt, *and its weight and significance, if any, are matters for your determination.*' (Italics added.)" Assuming that the false statements here do not show any consciousness of guilt, the error in giving the instruction was harmless. (People v. Rankin (1992), 9 Cal.App.4th 430, 436.)

Answer, Ex. A at 4.

The state appellate court's determination is neither contrary to nor an unreasonable application of controlling federal law. The Ninth Circuit has observed, "[s]o long as [a consciousness of guilt] instruction does not state that inconsistent statements constitute evidence of guilt, but merely states that the jury may consider them as indicating a consciousness of guilt, the instruction would not violate constitutional rights." Turner v. Marshall, 63 F.3d 807, 820 (9th Cir. 1995), overruled on other grounds, Tolbert v. Page, 182 F.3d 677 (9th Cir. 1999). CALJIC No. 2.03 provides that "such conduct is not sufficient by itself to prove guilt, and its weight and significance ... are matters for [the jury's] consideration." RT 734 (as read to jury). While the state appellate court did not rule expressly upon the constitutionality of the instruction, based on Turner, CALJIC No. 2.03 does not violate petitioner's constitutional rights because it merely allows the jury to consider the evidence as consciousness of guilt; it does not say that inconsistent statements constitute evidence of guilt.

Moreover, the appellate court was not unreasonable in holding that any error in giving the instruction would be harmless. To support a determination that a jury instruction was improper, the petitioner must show that "the ailing instruction by itself so infected the entire trial

that the resulting conviction violates due process." Estelle v. McGuire, 502 U.S. 62, 72 (1991). As the state appellate court explained, the instruction would only apply if the jury found [petitioner's] denial to be false, which would mean that the jury accepted the prosecution's evidence and rejected the defense's case. Thus, applying Estelle, the instruction alone would not have infected the entire trial.

For these reasons, petitioner's first claim does not provide grounds for relief.

IV. Jury Instruction CALJIC No. 10.60

Petitioner next claims that the state appellate court prejudicially erred by allowing jury instruction CALJIC 10.60 regarding corroboration of a rape victim's testimony. Pet. at 15-22. CALJIC 10.60 provides: "It is not essential to a finding of guilt on a charges [sic] contained in Counts One through Seven that the testimony of a witness with whom sexual relations is [sic] alleged to have been committed be corroborated by other evidence." RT 744 (as read to jury).

The state appellate court rejected petitioner's argument that such an instruction removes the absence of corroborating evidence from the jury's determination of guilt or innocence and thus shifts the burden of proof. Citing People v. Gammage, 2 Cal. 4th 693, 791 (1992), the court upheld the instruction because "there remains a continuing vitality in instructing juries that there is no legal requirement of corroboration. Further, even if we were to assume ... that all juries are aware of the no-corroboration requirement, ... no harm is done reminding juries of the rule." Answer, Ex. A at 5. Petitioner argued that a reasonable juror would interpret the instruction to mean that any failure to corroborate the victim is not relevant to the victim's credibility. The state appellate court disagreed, explaining that the instruction simply states that corroboration is not essential; it does not prohibit the jury from considering the lack of corroboration in making its determination of guilt or innocence. Id.

Citing Gammage, the Ninth Circuit in People of Territory of Guam v. McGravey, 14 F.3d 1344, 1355 (9th Cir. 1994), stated "it is proper to give *both* the non-corroboration instruction and the single-witness instruction," explaining that " [t]o achieve a proper balance

7

between the rights of the defendant and those of the complaining witness, both instructions must be given." (Emphasis in original.) Here, the jury was given both the non-corroboration instruction, CALJIC 10.60, and the single-witness instruction, CALJIC 2.27.[2] RT 737, 744. Moreover, " a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." Cupp v. Naughten, 414 U.S. 141, 146-47 (1973). In Bruce v. Terhune, 376 F.3d 950, 955-56 (9th Cir. 2004), in a case reviewing the giving of modified instructions based on CALJIC 10.60 and 2.27, the Ninth Circuit determined that when viewing the jury instructions in context and as a whole, the non-corroboration instruction did not shift the burden of proof away from the prosecution. As in Terhune, the jury in this case was instructed that the defendant was presumed innocent until proven guilty, that the State had the burden of proving guilt beyond a reasonable doubt and that the prosecution must prove each element of the crime. RT 740. Accordingly, it cannot be said that the lower court made a finding contrary to or unreasonably applying clearly established federal law when it upheld the instruction.

        Petitioner argues the Gammage holding should not apply because that case did not address the burden shifting argument presented by petitioner. However, Gammage did hold that CALJIC 10.60 is a correct statement of the law. Gammage, 2 Cal.4th at 700. Furthermore, as the state appellate court highlighted, the instruction merely states that corroboration "is not essential to a finding of guilt." The instruction does not require or suggest that the jury treat a lack of corroboration as irrelevant to its determination of guilt. Thus, it cannot be said that the appellate court was unreasonable in finding the jury instruction did not result in burden shifting.

/////

---

[2] CALJIC 2.27 reads: "You should give the uncorroborated testimony of a single witness whatever weight you think it deserves. Testimony by one witness which you believe concerning any fact whose testimony about that fact does not require corroboration is sufficient for the proof of that fact. You should carefully review all of the evidence upon which the proof of that fact depends." RT 737 (as read to jury).

The trial court did not commit prejudicial error in permitting the giving of CALJIC 10.60. Petitioner's second claim also fails.

V. <u>Suppression of Evidence</u>

Petitioner's final claim for federal habeas relief is that the prosecution withheld material exculpatory evidence, violating his right to due process. Pet. at 23-28.

On June 13, 2003, petitioner filed a motion for a new trial, asserting in effect that the prosecution failed to inform his counsel that the victims' maternal grandfather, William Aaron Brown, had been previously convicted and imprisoned for sexual assault.[3] CT 126-154. Petitioner explains that, at the time of the trial, his counsel did not have access to the grandfather's criminal record and had been informed he was in prison for spousal battery.[4] Pet. at 24. The defense asserted that because it was unaware of the grandfather's rape conviction, when the younger victim alleged she had been raped by her grandfather, it assumed the accusations were false and used them to impeach the victim. CT 140-141 (Declaration of Frances Huey). Petitioner argues that information about the grandfather's sexual offenses would have called into question "what information may have been made available to [the younger victim] and what information she may have learned regarding sexual matters that would have made her a seemingly more credible witness in this case." CT 127.

/////

/////

/////

---

[3] The defense does not actually claim the prosecution knew of the information and hid it from the defense. Rather, it seems to suggest no one was aware of the grandfather's background, other than the other witnesses, but that the prosecution had the greater ability to know of the information about his background. CT 132.

[4] According to defense counsel, she had been told the grandfather's present offense was for cohabitant abuse (Pen. Code § 273.5), and thus was not concerned that a subpoena for his criminal record had not been honored before trial. When it finally arrived after trial, she discovered the nature of his earlier offenses against his wife. CT 141, 145-146, 149.

1    Based on its own review of the record, this court accepts the Court of Appeal's

2 factual recitation of the material surrounding petitioner's claim regarding respondent's

3 suppression of evidence:

> . . . Defense counsel submitted an abstract of judgment from a 1984 sentencing that showed the grandfather's convictions for burglary, two counts of rape, and four counts of forcible oral copulation. According to the defense investigator, the grandfather told him (in an interview at prison) that he had been imprisoned in the 1980s for burglary and rape of his wife, at which time she divorced him. On his release, they remarried in 1987. In 1999, he pleaded no contest to a count of assault with a recidivist allegation.
>
> In their opposition, the People submitted a declaration from the grandmother. She denied ever talking about the grandfather's offenses with the victims or in their presence. However, she had talked with the defendant about these events some three to four years earlier. The only times the grandfather encountered the victims were from 1992-1993, and from 1997 to his convictions in 1999, when he was in and out of the home where the victims lived but never when other family members were absent.
>
> The trial court denied the motion. It cited the defendant's previous knowledge of the nature of the grandfather's earlier convictions, the defense's awareness that the younger victim had made a claim that her grandfather had raped her (which should have triggered an interest in his criminal history), and the absence of any prejudice (because the victims corroborated each other with respect to the defendant even if the grandfather had also molested the younger victim).
>
> The defendant contends this was an abuse of discretion, as the grandfather's prior convictions for "sexual molestation" are "highly relevant." He contends this evidence undermines any confidence in the verdict, because it would have allowed him to proceed with a claim of third-party culpability, to refute the People's argument that the victim could have learned about semen only from her experience with the defendant, and to provide an alternative basis for any physical indicia of molestation. He claims his preexisting knowledge of the grandfather's criminal record should be disregarded because he "is a person of below normal intelligence."

Answer, Ex. A at 6-8.

The state appellate court determined that the defendant failed to satisfy his heavy burden in establishing an abuse of discretion on a motion for a new trial, with citation to People

v. Andrade, 79 Cal.App. 4th 651, 654 n.1 (Cal. Ct. App. 2000).  It held that even if the evidence of the grandfather's sexual convictions was material, it "did not exonerate the defendant from having molested the victim as well (there being no evidence that the victims were unsure of the identity of their molester or sought to switch blame to a different individual), and thus does not provide a basis for [petitioner's] claim that the defense would have shifted dramatically to third party culpability."  Answer, Ex. A at 8-9.  The court further explained that "an earlier molestation offers an alternative basis for attributing premature sexual awareness to the younger victim, which eliminates a corroborating assurance of her veracity. . . [but does] not reach the level of evidence which puts the case 'in such a different light as to undermine confidence in the verdict.'"  Id. at 9 (citing Kyles v. Whitley, 514 U.S. 419, 435 (1995)).

It is well established that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution."  Brady v. Maryland, 373 U.S. 83, 87 (1963).  The duty to disclose favorable evidence to the defendant is applicable even if the defendant does not request such evidence.  Strickler v. Greene, 527 U.S. 263, 280 (1999).  "Favorable evidence is material, and constitutional error results from its suppression by the government if there is a 'reasonable probability' that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  Kyles, 514 U.S. at 433.  "A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidences in the outcome of the trial.'"  Id. at 434 (citing United States v. Bagley, 473 U.S. 667, 678 (1985)).

In this case, even if the prosecution had withheld the evidence presented now, pertaining to the former convictions of the victims' grandfather, the evidence itself does not undermine confidence in the verdict.  As the state appellate court highlighted, the grandfather's prior convictions were based on sexual violence with an adult spouse and thus not particularly probative of whether the grandfather molested his grandchildren.  Additionally, the grandfather

11

was in prison for much of the children's lives, and arguably lacked the opportunity to attack the victims as he was never alone with the children.[5] More importantly, evidence that the grandfather could have molested the younger victim does not exonerate the defendant from having molested her as well. The younger victim did not accuse her grandfather instead of the defendant, and the older victim never accused her grandfather of rape. Both children identified the defendant as their attacker. Presentation of evidence of the grandfather's past convictions of violence against an adult spouse would not have kept the children's testimony against the defendant from the jury.

Also as noted by the state appellate court, the defense did not lack notice that information surrounding the grandfather's history might be pertinent to its case. It has been held that "Brady does not compel disclosure of evidence available to the defendant from other sources including diligent investigation by the defense." Fullwood v. Lee, 290 F.3d 663, 685 (4th Cir. 2002) (citing Stockton v. Murray, 41 F.3d 920, 927 (4th Cir. 1994)). Here, the defendant himself was aware of the grandfather's convictions; though he failed to inform his counsel of this knowledge, his counsel was aware the younger victim had accused her grandfather of rape. Defense counsel could have obtained the information by conducting a diligent investigation into the child's allegations or questioning her client as to the grandfather's past.

For the foregoing reasons, it cannot be said that the state appellate court's denial of petitioner's motion for a new trial was contrary to or an unreasonable application of federal law.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

/////

---

[5] It appears undisputed that Mr. Brown was around the youngest victim for a brief period of time when she was less than a year old and again for about two years when she was between the ages of four and six. The victims' grandmother testified under oath that their grandfather was never alone with the children. CT 178, 188.

1    These findings and recommendations are submitted to the United States District
2 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty
3 days after being served with these findings and recommendations, any party may file written
4 objections with the court and serve a copy on all parties.  Such a document should be captioned
5 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
6 shall be served and filed within ten days after service of the objections.  The parties are advised
7 that failure to file objections within the specified time may waive the right to appeal the District
8 Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

9 DATED: February 12, 2009.

_____
U.S. MAGISTRATE JUDGE

ande2490.157